O

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **B.K. FASHION, INC.**, a California corporation,<br><br>             Plaintiff,<br><br>     v.<br><br>**AMBASSADOR COLLEGE BOOKSTORES, INC.**, a New York corporation, and DOES 1 through 15, inclusive,<br><br>             Defendants. | CASE NO. SACV 08-1467 AG (FFMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

Defendant Ambassador College Bookstores, Inc. ("Ambassador" or "Defendant") has filed a Motion to Dismiss ("Motion"). After considering all papers and arguments submitted, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

The following facts are taken from the First Amended Complaint ("FAC"), and for the purposes of this motion, the Court assumes them to be true.

Plaintiff B.K. Fashion, Inc. ("BK Fashion" or "Plaintiff") is a corporation in the business

of selling shirts and other items. (FAC ¶ 3.) Corinthian Colleges, Inc. ("CCI") operates over 100 college campuses throughout North America. (FAC. ¶ 3.) In 2004, Plaintiff was supplying "work shirts, backpacks, and other items" to CCI bookstores in California and Texas directly through CCI. (FAC ¶ 3.) That same year, Ambassador took over the operations of all CCI bookstores. (FAC ¶ 4.) In or about April 2004, Plaintiff began selling work shirts, backpacks, and other items to Ambassador for supply to CCI. (FAC ¶ 4.)

In 2007, Susan Piscopo ("Piscopo") was the Bookstore Coordinator and Merchandiser for Ambassador. (FAC ¶ 15.) Piscopo had the authority to and did order goods for CCI bookstores. (FAC ¶ 15.) In or about April 2007, Piscopo, on behalf of Ambassador, called BK Fashion and spoke to Sammy Khalil ("Khalil"), President of BK Fashion. (FAC ¶ 16.) Piscopo informed Khalil that Ambassador wanted BK Fashion to become the "permanent vendor" to Ambassador and supply work shirts, backpacks, and other items for all CCI campuses. (FAC ¶ 16.)

On or about August 21, 2007, Piscopo, on behalf of Ambassador, spoke to Khalil by telephone. (FAC ¶ 17.) Piscopo informed Khalil that she would send him an email with a spreadsheet of "a budget of items that Plaintiff supply," including work shirts, backpacks, and other items, and that Ambassador wanted Plaintiff to manufacture and supply all of the items in the spreadsheet. (FAC ¶ 17.) Piscopo also stated that Ambassador would pay the prices quoted by Plaintiff and pay on Plaintiff's requested terms: "payment in 45 days." (FAC ¶ 17(b).) Plaintiff then sent BK Fashion the spreadsheet by email. (*See* FAC Ex. 1.) On or about October 29, 2007, BK Fashion sent Ambassador an invoice for $235,993.50 for the items on the spreadsheet. (FAC ¶ 18.) BK Fashion purchased the items on the invoice and stored them in a warehouse. (FAC ¶ 18.) No objection was made. (FAC ¶ 18.)

From about March 6, 2008, until about May 6, 2008, Ambassador placed 20 additional orders for work shirts, backpacks, and other items with BK Fashion in the total amount of $94,296.75, "all of which were manufactured and shipped to Defendant Ambassador." (FAC ¶ 19.) One of those orders, placed on or about May 6, 2008, was a rush order for 2,000 natural flannel sheets in the amount of $28,000. (FAC ¶ 19.) Ambassador requested that Plaintiff mail the order overnight and agreed to immediate payment for the items. (FAC ¶ 19.) Plaintiff filled

that order, but was never paid for it. (FAC ¶ 19.)

Plaintiff had the work shirts and backpacks specifically manufactured for Ambassador. The shirts and backpacks were embroidered with special logos requested by Ambassador. (FAC ¶ 7.) As a result of the specific requests made by Ambassador, the embroidered shirts and backpacks are "unsuitable for sale to anyone other than Defendant Ambassador for use by CCI." (FAC ¶ 8.)

Based on these facts and others, Plaintiff states one claim for breach of contract and one claim for fraud against Ambassador. Ambassador now moves for an order dismissing both claims, or, in the alternative, an order for a more definite statement.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(6). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). "[O]rdinary pleading rules are not meant to impose a great burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007)). Thus, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show "that the pleader is entitled to relief." *Bell Atlantic*, 127 S.Ct. at 1965. Conversely, a complaint should be dismissed for failure to state a claim where the factual allegations do not raise the "right of relief above the speculative level." *Id*.

In deciding a 12(b)(6) motion, the Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993); *see also Enesco Corp v. Price/Costco, Inc*., 146 F.3d 1083,

1085 (9th Cir. 1988). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Dismissal under Rule 12(b)(6) without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *See also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Under Federal Rule of Civil Procedure 12(e), even where a plaintiff has stated a claim, a court may dismiss with an order for a more definite statement where a pleading is "so vague or ambiguous that the [opposing] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

**ANALYSIS**

**1.      PLAINTIFF'S FIRST CLAIM FOR BREACH OF CONTRACT**

Plaintiff's first claim for breach of contract alleges that Defendant breached an agreement between the parties by failing to pay $330,290.25 for items Plaintiff shipped and delivered to Defendant.

California law precludes enforcement of a contract for the sale of goods for $500 or more unless the contract is signed by the party against whom enforcement is sought. Cal. Comm. Code § 2201; *see also Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 2d 432, 439 (1988). This requirement of a written, signed agreement serves to "require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made." *Seaman's Direct Buying Serv. v. Standard Oil Co. of Cal.*, 36 Cal.3d 752, 764 (1984) (overruled on other grounds, *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 86 (1995)); *see also Riley v. Bear Creek Planning Committee*, 17 Cal.3d 500, 509 (1976) (the purpose of the Statute of Frauds is "to prevent fraud and perjury . . . by requiring . . .

the more reliable evidence of some writing signed by the party to be charged") (overruled on other grounds, *Citizens for Covenant Compliance v. Anderson*, 12 Cal.4th 345, 366 (1995)).  The Statute of Frauds provides three exceptions to its requirement of a written contract, including an exception for goods that are "specially manufactured for the buyer" and "not suitable for sale to others in the ordinary course of the seller's business."  Cal. Comm. Code § 2201(3)(a).

Here, Plaintiff alleges that Defendant breached a contract to pay $330,290.25 for assorted goods.  While Plaintiff fails to allege the existence of a written contract signed by Defendant, Plaintiff does allege that the work shirts and backpacks were specially manufactured for Ambassador and unsuitable for sale to others in the ordinary course of Plaintiff's business.  (FAC ¶¶ 7, 8.)  Thus, Plaintiff's breach of contract claim is not barred by the Statute of Frauds as to the goods that were allegedly specially manufactured for Ambassador, including the work shirts and backpacks.  *See* Cal. Comm. Code § 2201(3).  But it is unclear what portion of the goods Defendant allegedly ordered were specially manufactured.  In the First Amended Complaint, Plaintiff alleges that "pursuant to the Agreement," it "shipped and delivered to Defendant work shirts and backpacks, in the total amount of $330,290.25."  (FAC ¶ 9.)  Elsewhere in the First Amended Complaint, however, Plaintiff alleges that Defendant's orders included "work shirts, backpacks, and other items," including $28,000 in flannel sheets.  (FAC ¶ 19.)  Plaintiff does not allege whether those "other items," including the flannel sheets, were specially manufactured for Ambassador, and the Court thus cannot determine what portion of Plaintiff's claim is barred by the Statute of Frauds.  Defendant requests that the Court order a more definite statement under Federal Rule of Civil Procedure 12(e).  Finding good cause, the Court grants Defendant's request.

Defendant's Motion is GRANTED as to Plaintiff's first claim for breach of contract.  Plaintiff may file a Second Amended Complaint by May 18, 2009, alleging what portion of the items Ambassador allegedly ordered from Plaintiff were specially manufactured for Ambassador.

## 2. PLAINTIFF'S SECOND CLAIM FOR FRAUD

Plaintiff's second claim alleges that Defendant committed fraud by, through Piscopo, engaging in "a fraudulent scheme and plan to have Plaintiff supply work shirts, backpacks, and other items to bookstores for CCI and avoid paying for the goods." (FAC ¶ 15.) Defendant argues that Plaintiff's claim fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

To state a fraud claim under California law, a plaintiff must allege that: (1) the defendant made a representation or omission of a material fact; (2) the representation was false; (3) the defendant knew of its falsity at the time of the representation; (4) the defendant intended to defraud the plaintiff; (5) the plaintiff actually and reasonably relied on the misrepresentation; and (6) damages resulted. *See Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73 (1990). Federal Rule of Civil Procedure 9(b) further requires that such claims be pled "with particularity." Fed. R. Civ. P. 9(b); *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000) (fraud must be pled "with a high degree of meticulousness"). To comply with the particularity requirement of Rule 9(b), a plaintiff must allege "the time, place, and content of an alleged misrepresentation," as well as "specific descriptions of the representations made" and the "reasons for their falsity." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (internal citations omitted). A plaintiff must also identify the actual source of the fraud, including whether the alleged fraudulent statement was oral or written and, if written, what particular documents were involved. *Arroyo v. Wheat*, 591 F. Supp. 136, 139 (D. Nev. 1984). In short, "averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *accord Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

Here, Plaintiff alleges that Ambassador made false representations that it would pay for certain items, that Ambassador knew those representations were false and never intended to pay

for the items, that Ambassador intended to defraud Plaintiff, and that Plaintiff reasonably relied on the misrepresentations to its detriment.  (FAC ¶¶ 20-25.)  Specifically, Plaintiff alleges that on August 21, 2007, Piscopo made a false representation by phone that Ambassador would pay for the items in the spreadsheet sent to Plaintiff, and that Ambassador would pay Plaintiff's requested prices on Plaintiff's requested terms.  (FAC ¶ 17.)  Plaintiff also alleges that Ambassador placed 20 additional orders with BK Fashion, including a rush order for flannel sheets.  According to the First Amended Complaint, Piscopo requested the sheets by telephone on or about May 6, 2008, and agreed to immediate payment.  (FAC ¶ 19.)

Defendant argues that Plaintiff's fraud claim fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  The Court disagrees.  Plaintiff has sufficiently alleged two separate misrepresentations: Piscopo's statement that Ambassador would pay for the items in the spreadsheet and Piscopo's statement that Ambassador would pay for the flannel sheets.  Plaintiff has sufficiently alleged who made those statements, when they were made, how they were made, and what was stated.  Plaintiff has also sufficiently alleged that Ambassador knew these representations were false when they were made, that Ambassador intended to defraud Plaintiff, that Plaintiff reasonably relied on Ambassador's representations, and that Plaintiff was damaged by the representations.  (*See* FAC ¶¶ 20-25.)  Plaintiff has stated a claim for fraud based on those two misrepresentations.

Defendant's Motion is DENIED as to Plaintiff's second claim for fraud.

**DISPOSITION**

Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiff may file a Second Amended Complaint by May 18, 2009, alleging what portion of the items Ambassador allegedly ordered from Plaintiff were specially manufactured for Ambassador.

IT IS SO ORDERED.

DATED: April 27, 2009

_____
Andrew J. Guilford
United States District Judge